**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-1152 (ABJ) |
| JD EQUIPMENT DE MEXICO, S DE R.L. DE CV, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

On April 22, 2019, the United States of America brought this action against defendants JD Equipment de Mexico S de R.L. de CV ("JD Equipment"), South Point Equipment, LLC ("South Point"), and Alexis Dubourdieu Urdangarin ("Dubourdieu"), pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* Compl. [Dkt. # 1] ¶¶ 1, 14–16. The government alleges that defendants "individually and collectively knowingly submitted, caused to be submitted, and/or facilitated the submission of false and fraudulent documents and testimony to the federal government" and "knowingly submitted and/or aided in the submission of bills, invoices, checks, records statements, other documents and testimony to government agencies knowing full well that they were false." Compl. ¶ 2. Now pending before the Court is the government's motion for an entry of default judgment. Pl.'s Mot. for Default J. [Dkt. # 15] ("Pl.'s Mot."). It asks the Court to enter judgment in its favor and to order the defendants to pay treble damages in the amount of $4,095,854.91, plus a penalty of $10,000 for each of nine allegedly false transactions, for a total award of $4,185,854.91. Pl.'s Mot. at 4. Having considered the government's submissions, the applicable case law and statutory authority, and the record as a whole, the Court will **GRANT** the motion.

## BACKGROUND

The Export-Import Bank of the United States ("EXIM Bank") is an independent agency of the executive branch of the United States government, serving as the official export credit agency of the United States for purposes of international agreements. Compl. ¶ 7. EXIM Bank supports financing for the export of U.S. goods and services to companies overseas, by, among other things, issuing loan guarantees or loan insurance policies to financial institutions that lend to foreign companies for the purpose of purchasing goods or services exported from the U.S. Compl. ¶ 7.

According to the complaint, around June 2011, Banco Monex, S.A. ("Banco Monex"), a Mexican financial institution, applied to EXIM Bank to renew its Financial Institution Buyer Credit Insurance Policy. Compl. ¶ 22; Decl. of Special Agent Patrick McCurry in Supp. of Pl.'s Mot. [Dkt. # 15-2] ("McCurry Decl.") ¶ 5. The policy supported a revolving line of credit issued to defendant JD Equipment, which enabled it to purchase agricultural equipment made in the United States. Compl. ¶ 22; McCurry Decl. ¶ 5. After JD Equipment purchased U.S.-made equipment from a U.S. exporter, it was supposed to pay for the equipment and then submit records to Banco Monex verifying the purchase, shipment, and payment for the equipment, and certifying that the equipment originated in the United States. Compl. ¶ 24; McCurry Decl. ¶ 7. Defendant Dubourdieu, the owner and General Director of JD Equipment, Compl. ¶ 16, would "sign a promissory note for the amount of [the] transaction," after which Banco Monex would disburse the loan amount to JD Equipment's Banco Monex account. Compl. ¶ 24. JD Equipment would later repay Banco Monex or risk default. *See* Compl. ¶ 22. If an insured loan defaulted, Banco Monex would file a claim with EXIM Bank under the credit insurance policy. Compl. ¶ 11.

Around August 2012, Banco Monex applied to EXIM Bank to renew its Financial Institution Buyer Credit Insurance Policy, which continued to support a revolving line of credit to

JD Equipment and was scheduled to expire on October 1, 2012; although JD Equipment had an outstanding balance at the time, EXIM Bank approved the application because JD Equipment was current with its payments and no claims had been filed against the policy. Compl. ¶¶ 22–23. This second policy was in effect from October 1, 2012 until October 1, 2013. Compl. ¶ 23. Dubourdieu was the guarantor for both policies. Compl. ¶ 23.

Between approximately August 9, 2012 and February 8, 2013, defendants submitted to Banco Monex certifications and documents for nine pieces of equipment that purportedly were sold by defendant South Point to JD Equipment, and exported from the United States to Mexico. Compl. ¶¶ 25–43; McCurry Decl. ¶ 9. Banco Monex then disbursed a total of $1,381,000 for the nine pieces of equipment. Compl. ¶ 44; McCurry Decl. ¶ 8. According to the government, JD Equipment and its guarantor, Dubourdieu, failed to pay back that amount. Compl. ¶ 44; McCurry Decl. ¶ 12. Banco Monex attempted to negotiate a settlement with Dubourdieu and JD Equipment, but it was unsuccessful, Compl. ¶ 45, and so it filed claims with EXIM Bank. Compl. ¶ 46. These claims were paid in the amount of $1,365,284.97. Compl. ¶ 46. EXIM Bank attempted to collect from JD Equipment and Dubourdieu, but neither have reimbursed EXIM Bank. Compl. ¶¶ 47–48. The U.S. later learned that JD Equipment and South Point were both owned by Dubourdieu – information that Dubourdieu did not disclose to Banco Monex at the outset. Compl. ¶¶ 49–50.

The government filed this civil action under the False Claims Act on April 22, 2019. *See* Compl. Defendants waived service of process through their counsel, Mr. Phil Hilder. Waiver of Serv. [Dkt. # 4]. The Court issued a stay on the proceedings, Min. Order (July 16, 2019), while the parties engaged in settlement discussions, *see* Joint Status Reps. [Dkt. # 6, 8, 10], but they were unsuccessful. *See* Pl.'s Mot. ¶ 4. The Court lifted the stay on December 20, 2019, and it ordered defendants to respond to the complaint by February 19, 2020. Min. Order (Dec. 20, 2019).

Defendants failed to do so, and no response has been filed to date. The government filed an affidavit for default, Pl.'s Req. for Clerk's Entry of Default [Dkt. # 12], and the Clerk of Court then entered defendants' default. Clerk's Entry of Default [Dkt. # 13].[1] The government then filed a motion for default judgment, requesting (1) "a determination that [d]efendants are in default"; (2) judgment to be entered in its favor; and (3) an order directing defendants to pay treble damages in the amount of $4,095,854.91, plus a penalty of $10,000 for each of nine allegedly false transactions, for a total award of $4,185,854.91. Pl.'s Mot. at 4.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(a) provides that the clerk of the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered, a court may enter a default judgment order pursuant to Rule 55(b). Whether default judgment is appropriate is in the discretion of the trial court. *See Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980); *Jackson v. Beech,* 636 F.2d 831, 835 (D.C. Cir. 1980). Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971). "Although the default establishes a defendant's liability, the court is required to

---

[1] After the Clerk of Court's entry of default, the government failed to file a motion for default judgment pursuant to Federal Rule of Civil Procedure 55. The Court ordered the government to show cause by November 11, 2020 as to why the case should not be dismissed for want of prosecution. Min. Order (Oct. 21, 2020). The government later submitted a response to the Court, Pl.'s Resp. to the Ct.'s Show Cause Order [Dkt. # 14], and a Motion for Default Judgment, Pl.'s Mot., so the Court vacated the order to show cause. Min. Order (Nov. 16, 2020).

make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* Accordingly, when moving for default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.*

## ANALYSIS

"Given 'the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense,'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008), quoting *Gutierrez v. Berg Contracting Inc.*, No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000), the Court concludes that default judgment is appropriate in this case. The Clerk of Court has already entered defendants' default, so the factual allegations in the complaint are therefore taken as true. *See R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d at 30. The Court finds that the government's complaint sufficiently alleges facts to support its claims, and therefore, the government is entitled to default judgment on the question of defendants' liability for submitting false documentation relating to nine transactions to receive loan disbursement payments that did not result in the export or sale of agricultural equipment.

I. **The government is entitled to recover treble damages and penalties under the False Claims Act in the amount of $4,185,854.91.**

The government has established that the combined total of the nine fraudulent disbursements from Banco Monex to JD Equipment was $1,381,000. *See* Compl. ¶¶ 25–44; McCurry Decl. ¶¶ 8–9. Banco Monex filed claims with EXIM Bank, which paid a combined $1,365,284.97 to Banco Monex and assumed the debts. *See* Compl. ¶¶ 46–47; McCurry Decl. ¶ 13.

The False Claims Act provides:

> [A]ny person who--
>
>> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A)–(B) (internal citation omitted).

Here the record supports a finding that defendants "individually and collectively knowingly submitted, caused to be submitted, and/or facilitated the submission of false and fraudulent documents and testimony to the federal government" and "knowingly submitted and/or aided in the submission of bills, invoices, checks, records statements, other documents and testimony to government agencies knowing full well that they were false." Compl. ¶¶ 1–2; *see* Compl. ¶¶ 49–57; McCurry Decl. ¶¶ 9–13. It reflects that defendants "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval," and they "knowingly ma[d]e, use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B); *see also* Compl. ¶¶ 49–57; McCurry Decl. ¶¶ 9–13. Thus, the government is entitled to recover the amount paid under EXIM Bank's two guarantees, plus "3 times the amount of damages which the [g]overnment sustain[ed]" and a civil penalty. 31 U.S.C. § 3729(a). The Court finds defendants to be liable for treble damages in the amount of $4,095,854.91, and a civil penalty of $10,000 for each of the nine false transactions ($90,000), for a total award of $4,185,854.91.

## CONCLUSION

The Court will **GRANT** the government's motion for default judgment.  Judgment will be entered against defendants in the amount of $4,095,854.91.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 23, 2021